UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-

Case No. 07-20393
Hon: AVERN COHN

ERIC BERG,

    Defendant.

_____/

# MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

## I.

This is a criminal case. Defendant, Eric Berg (Berg), is charged with (1) Conspiracy To Distribute Controlled Substances - Marijuana - 100 kilograms or more, 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(vii), along with 15 other individuals, and (2) Possession With Intent To Distribute Controlled Substances - Marijuana, aiding and abetting, 21 U.S.C. § 841(a)(1),18 U.S.C. § 2.

Before the Court is Berg's motion to suppress evidence taken from him on or about April 9, 2006, after a traffic stop. Berg says that the stop and the subsequent search of the trunk of the car he was driving was a violation of his constitutional rights to be free from unreasonable search and seizure under the Fourth Amendment. Particularly Berg says the car, a Cadillac, was not committing a traffic violation when it was stopped.

For the reasons that follow, the motion will be denied.

II.

A.

An evidentiary hearing was held on the motion on September 2, 2010, at which George Tsouroullis (Tsouroullis), a Sterling Heights police officer on loan to the Drug Enforcement Administration, Jason Schmittler (Schmittler), a Shelby Township police officer, and Patrick Dyjeweski (Dyjeweski), a City of Troy police officer assigned to road patrol duties, testified.

B.

The testimony at the evidentiary hearing disclosed the following:

Joseph Herfey (Herfey), a resident at 4500 Timberlake (Timberlake) in Shelby Township, went to Toronto, Ontario, where he ordered 200 pounds of marijuana and 20,000 pills of MDMA. This information was communicated to Tsouroullis by Toronto law enforcement officers. Surveillance in Toronto established Herfey meeting with a supplier and known drug courier where duffle bags and white plastic bags were observed being placed in a mini-van. The mini-van and Herfey's car were observed going from Toronto to a residence in Windsor, Ontario. Herfey and an associate were observed going to the United States where the two of them visited a residence in Sterling Heights, after which Herfey went to his residence on Timberlake.

Timberlake was surveilled with the expectation that the drugs purchased in Toronto would end up there. Surveillance, intermittently conducted on Timberlake, did not observe any drugs being delivered.

On August 9, 2006, Schmittler was informed of an anonymous 911 call in which the caller informed the operator that she had been inside Timberlake and observed large duffle

2

bags containing marijuana and ecstacy pills, and that "Joe" was selling drugs.

Schmittler reestablished surveillance on Timberlake. At about 2:30 a.m. on August 10, Herfey and Berg were observed leaving Timberlake in a 2005 silver Dodge Durango which had previously been at the residence. The two men were observed driving to a shopping mall where they circled the parking lot several times and then parked. After parking for awhile they started the car up and circled the lot again. To Schmittler, an experienced drug officer, this was a technique used in drug trafficking offenses. Berg and Herfey were then lost by the surveilling officers and were not seen until they returned to Timberlake about an hour later.

Berg and Herfey were then seen leaving Timberlake. This time Herfey was driving the Dodge Durango, and Berg was driving a white 2002 Cadillac. The two were traveling in tandem, a common occurrence in the transportation of drugs. The first vehicle was observed going through a yellow light, and the second went through a red light. This suggested to the surveilling officers that the two vehicles did not want to be separated.

Based upon what Schmittler had observed, he believed that drugs were being transported. Schmittler then requested a marked police car to make a stop. A marked police car is used for safety purposes in such circumstances.

Dyjeweski, on road patrol at the time with a fellow officer, received a request through the Troy Police Department dispatcher, to initiate a stop of the two cars: a white Cadillac traveling in tandem with a silver colored Dodge Durango. While the two vehicles were stopped at a traffic signal, with the assistance of a second Troy police car, they were stopped.

Herfey, driving the Durango, was approached by Dyjeweski. Berg, driving the Cadillac, was approached by Dyjeweski's partner. Dyjeweski smelled a strong odor of

marijuana. He was initially not sure which of the two vehicles it was coming from.

Dyjeweski described what occurred as follows:

> A. I made contact, requested a driver's license from the driver. At that time you could smell a strong odor of marijuana from the exterior of the vehicle.
>
> Q. All right. And you say the vehicle. Which vehicle are you talking about?
>
> A. At that time it was hard for us to determine because both vehicles were stopped in the middle through lane, and I mean it was really strong. It was hard to determine if it came from the actual Cadillac or the Dodge Durango.
>
> Q. Now, when you say a strong odor of marijuana, I take it in the course of your employment you have had to have contact with marijuana on a number of occasions; is that correct?
>
> A. Yes.
>
> Q. Can you distinguish between, for example, burning marijuana when someone is smoking it and raw marijuana when it is loose?
>
> A. Yes.
>
> Q. And I don't know how you do this, but can you describe whether there is a difference between the two smells?
>
> A. There is a difference between the two smells. I mean after somebody has smoked marijuana it's got sort of a skunky type of smell to it as opposed to, you know, marijuana that hasn't been smoked yet, I guess you could say.
>
> Q. * * * You described this as a strong odor. * * *
>
> A. There was a strong odor. I assumed that there was a large amount of marijuana in either of the vehicles. I have never -- in my six-and-a-half years it was probably the strongest I ever smelled coming out of the vehicle.
>
> Q. * * * Were you the only one that smelled this strong

|   |   |   |
|---|---|---|
|   |   | smell of marijuana coming from the vehicles? |
| A. |   | No, there was a plain clothes officer from Shelby Township there with me because Officer Rushton and Sergeant Catlin made contact with the driver of the Cadillac while myself and the plain clothes officer from Shelby Township made contact with the driver of the Durango and he mentioned it as well. |
| Q. |   | * * * So what did the four of you decide to do with these two vehicles and this strong odor of marijuana? |
| A. |   | Sergeant Catlin and Officer Rushton asked the driver of the Cadillac to step out. At that time they secured him and asked him if there is anything inside the vehicle, and I think he made a comment to the fact that I think you should talk to my lawyer. |

* * *

At that time the Shelby Township plain clothes officer mentioned that there should be a large amount of marijuana in either of the vehicles we had stopped. That's when Sergeant Catlin and Officer Rushton opened the trunk compartment of the Cadillac and noticed or discovered three large black duffel bags. They unzipped one of them and inside that duffel bag that they opened there was packaged and Ziploc'd gallon size bags of marijuana.

### III.

The government initially justified the stop of the two vehicles on the grounds a traffic violation was observed by the arresting officer. In the government's post-hearing brief, no mention is made of a traffic violation. Rather, the government says an "investigatory stop . . . based on reasonable suspicion based on the totality of the circumstances" was involved.

"The lawfulness of an investigatory stop is judged by the totality of the circumstances to determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior."

5

United States v. Campell, 549 F.3d 364, 371 (6th Cir. 2008) (internal citation omitted). In United States v. Long, 464 F.3d 569, 573-74 (6th Cir. 2006), an anonymous 911 call was the predicate event. In United States v. Jacob, 377 F.3d 573, 577 (6th Cir. 2004) counter-surveillance activity by suspects was a significant factor. In United States v. French, 974 F.2d 687, 692 (6th Cir. 1992), the suspects driving in tandem was a significant factor. See also United States v. Ferguson, 8 F.3d 385, 390 n.3 (6th Cir. 1993) ("Although the opinion does not expressly say so, the officer apparently suspected that because the vehicles appeared to be traveling in tandem, they were probably involved in the transportation of drugs.").

Here, the "totality of the circumstances" to justify the stop is the collective knowledge of Schmittler, who gave the order to make the stop. Marshaling that knowledge:

- Herfey was likely engaged in drug activity particularly transporting marijuana from Toronto to Sterling Heights;

- Herfey lived at Timberlake which was the end-point of his return trip from Toronto;

- There was a report of drug activity at Timberlake;

- Herfey's in and out activity at Timberlake was out of the ordinary and gave an indication of inculpatory activity;

- Berg was part of such activity;

- Schmittler characterized the car activity as "cleaning technique." He said "it's a chance for the suspects to see if they are being followed";

- The second time Berg and Herfey left Timberlake they drove in separate vehicles in tandem and took care their two vehicles did not separate.

Schmittler could as an experienced drug officer reasonably conclude it was likely

6

Berg and Herfey were transporting drugs. Direct evidence of drug activities is not necessary; circumstantial evidence of drug activity is sufficient. United States v. Foster, 376 F.3d 577, 586 (6th Cir. 2004) ("an officer may conduct a Terry stop based on the reasonable inferences he may draw 'in light of his experience'") (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). Schmittler had a sufficient basis to engage in an investigatory stop. Once the vehicles were stopped and the officers experienced a strong smell of marijuana, they had probable cause to search both vehicles. Foster, 376 F.3d at 586.

IV.

For the reasons stated above, Berg's motion to suppress is DENIED.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: October 6, 2010